UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael A. Williams,

    Petitioner,

    v.                                                       Civil Action No. 2:10-CV-219

Andrew Pallito, Commissioner,
Vermont Department of Corrections,

    Respondent.

## REPORT AND RECOMMENDATION
(Docs. 2, 5, 8 and 9)

Michael A. Williams, proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Williams was convicted by a jury in 2009 of aggravated domestic assault for attempting to cause serious bodily injury to Brandi Brace. *See* 13 V.S.A. § 1043(a)(1); (Docs. 5-2 at 5, 7-2 at 104). The Vermont Supreme Court affirmed his conviction on direct appeal. *See State v. Williams*, No. 2009-253, 2010 WL 3277097 (Vt. Aug. 20, 2010).

Williams argues that (1) the trial court erred by admitting evidence of his prior bad acts and (2) the victim's testimony was contradicted by the testimony of Williams's alibi witness. The respondent, Andrew Pallito, Commissioner of the Vermont Department of Corrections, moves to dismiss Williams's petition, arguing that his claims are without merit or have not been exhausted. *See* 28 U.S.C. § 2254(b)(1)(A); (Doc. 9 at 2.) For the reasons set forth below, I recommend that the Commissioner's motion be GRANTED and this case be DISMISSED.

## **Factual Background**

The Vermont Supreme Court recounted the following evidence, adduced at Williams's trial. Brandi Brace met Williams in November 2006 and began an intimate relationship with him in August 2007. Brace ended the relationship in February 2008. At that time, Brace was pregnant with Williams's child. Brace obtained a relief-from-abuse order prohibiting Williams from contacting her. In September 2008, Brace gave birth to a baby girl. *Williams*, 2010 WL 3277097, at ¶ 2.

The events giving rise to Williams's conviction occurred on November 8, 2008. Williams allegedly appeared at Brace's apartment in Bennington, Vermont and let himself in, announcing that he wanted to meet his daughter. Brace testified that, although Williams initially appeared calm, after interacting with the baby for a short time, his demeanor changed. Williams asked Brace "[w]hat is your . . . problem? You're the reason I'm not part of her life," and then struck Brace on the mouth. Becoming progressively more enraged, Williams rose from his chair, grabbed Brace by the throat and choked her while shouting that he was going to kill her. Williams released Brace after a short time, but repeated the action several more times over the next twenty minutes. Williams then walked into the baby's bedroom, said "[d]addy loves you," tried to kiss Brace, and told her he loved her. Before leaving Brace's apartment, Williams warned her that she could call the police and they could "hide you and my daughter but they won't hide your whole family. . . . I can draw you out. You'll go to your little sister's funeral." *Id.* at ¶ 3.

2

Brace reported the incident to the police the following afternoon, and Williams was charged with aggravated domestic assault.  Before trial, Williams gave notice of his intent to call alibi witnesses, and the State provided notice of its intent to offer evidence of prior bad acts under Vermont Rule of Evidence 404(b).  The State's notice identified two incidents of prior assaults by Williams against Brace.  The first occurred in September 2007, when Brace attempted to call her mother after an argument with Williams, and, in response, Williams allegedly struck and choked her.  The second occurred the following month, in October 2007, when Williams again allegedly punched and choked Brace while she was attempting to leave and walk to her mother's house in Bennington.  Williams objected to the admission of the evidence, asserting that any probative value was substantially outweighed by its unfair prejudicial effect.  *Id.* at ¶ 4.

The court held a hearing on the motion just before the start of trial.  Citing Vermont Supreme Court decisions in *State v. Sanders*, 168 Vt. 60, 716 A.2d 11 (1998), and *State v. Hendricks*, 173 Vt. 132, 787 A.2d 1270 (2001), the trial court ruled that the evidence was relevant and admissible to provide the jury "context within which to assess claims of domestic violence within [the parties'] relationship," and that the danger of unfair prejudice from the evidence did not substantially outweigh its probative value.  Brace subsequently testified about the two prior assaults at trial.  She also explained that Williams had another side to his character that was sweet and loving but that his moods were "like a light switch."  She did not report the earlier assaults because Williams was always sorry afterwards and she was hopeful that it would not happen again.  *Id.* at ¶ 5.

The State's only other witness was the investigating officer, who testified that he took Brace's statement on the day after the incident, and that she was upset and nervous at the time and had a cut on her lip. The officer did not observe any injuries to Brace's neck, but explained that one often did not observe physical signs of strangulation. *Id.* at ¶ 6.

Williams called two alibi witnesses. A woman who claimed that Williams had been her "friend for a long time" testified that Williams was visiting her house in Gloversville, New York, which is several hours drive from Bennington, sometime between 5:00 and 6:00 p.m. on the day of the assault, and that she also saw him the next afternoon in Gloversville. Brace could not recall the exact time of the assault at trial, but reported to the police that it had occurred at about 6:00 p.m. Williams's girlfriend, who lives near Gloversville, testified that Williams picked her up the morning after the assault and that they spent the day together. *Id.* at ¶ 7.

As noted, the jury returned a verdict of guilty on the charge of aggravated domestic assault. The court denied a motion for new trial, and Williams was later sentenced to a term of ten to fifteen years.

On direct appeal, Williams contended the trial court erred in admitting Brace's testimony concerning the prior assaults under Vermont Rule of Evidence 404(b). In advancing this claim, he argued that: "This was a classic swearing contest; a case dependent completely upon the credibility of the [alleged victim]. Amy Vonostrand, an alibi witness, placed Mr. Williams at her house in Gloversville, New York during the time of the alleged assault." (Doc. 5-2 at 21.) As a result, Williams argued, absent any

4

independently corroborating evidence of the assault, the erroneously admitted "other crimes" evidence influenced the jury's decision to believe Brace. (*Id.*) The Vermont Supreme Court rejected Williams's arguments and affirmed his conviction, upholding the trial court's decision to admit the evidence of prior bad acts. The Vermont Supreme Court reasoned that, although the better practice might have been to defer the ruling until trial when there was a more complete record upon which to base the decision, the trial court did not abuse its discretion in admitting the evidence of Williams's prior bad acts. *Williams*, 2010 WL 3277097, at ¶¶ 11, 14.

## Discussion

**I.     Standard of Review**

This Court's power to review decisions coming out of the state's highest court is limited. The standard of review is set forth in 28 U.S.C. § 2254, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Clearly established Federal law" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams*, 529 U.S. at 405; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407; *Murray*, 451 F.3d at 74. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411).

## II.  Prior Bad Act Evidence

Williams first argues that the state trial court erred in admitting Brace's testimony concerning the prior assaults under Vermont Rule of Evidence 404(b). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Vt. R. Evid. 404(b). This Vermont rule

mirrors the federal rule. Fed. R. Evid. 404(b). In determining whether to admit the evidence, the court must also weigh the probative value of the evidence against the prejudicial effect on the defendant. *See* Vt. R. Evid. 403. The Vermont Supreme Court held that the trial court did not abuse its discretion in admitting evidence of the prior assaults because it was admissible to show the context of the relationship between Williams and Brace and to "explain what might otherwise appear to be incongruous behavior to a jury, such as remaining with an abusive partner and delaying report of abuse." *Williams*, 2010 WL 3277097, at ¶15.

### A.     Legal Standard

Generally, whether a state court properly applied its own rules of evidence does not rise to the level of a constitutional violation warranting federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In other words, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional error. *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("[E]rroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived [him] of a fundamentally fair trial." (quotation omitted)); *Schurman v. Leonardo*, 768 F. Supp. 993, 1001 (S.D.N.Y. 1991).

"[T]o demonstrate that the admission of evidence by a state trial court constitutes a ground for federal habeas relief, a petitioner must demonstrate that the alleged evidentiary error violated an identifiable constitutional right, and, in doing so, a petitioner

7

bears a heavy burden . . . ." *Jones v. Conway*, 442 F. Supp. 2d 113, 130 (S.D.N.Y. 2006). To violate due process, the improper evidence must be sufficiently material to provide the basis for the conviction or to remove a reasonable doubt that would have existed on the record without it. *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quotation omitted).

With respect to improper prior bad act evidence, courts have held that a defendant is not denied due process by the admission of prior bad act evidence which is relevant. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Brown v. Conway*, No. 06 Civ. 2574(KMW)(DFE), 2010 WL 1221837, at *11 (S.D.N.Y. Mar. 29, 2010). In addition, this Court has adopted a view consistent with the Ninth Circuit that "[t]he admission of other crimes, wrongs, or acts does not deprive the defendant of due process where the trial judge instructs the jury on the proper and improper uses of the evidence." *Forbes v. Patrissi*, No. 1:94-CV-268, slip op. at 10, 13 (D. Vt. Oct. 25, 1995) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (no due process violation where judge instructed jury that evidence could be used to prove intent)).

### B. Application

The evidence at issue here did not deny the defendant due process. As noted above, the prior bad act evidence was relevant to show the context of the relationship

between Williams and Brace and to "explain what might otherwise appear to be incongruous behavior to a jury, such as remaining with an abusive partner and delaying report of abuse." *Williams*, 2010 WL 3277097, at ¶ 15.

The trial judge in this case instructed the jury as to the limited way in which it was permitted to consider Brace's testimony about Williams's prior assaults. The trial court instructed the jury that it could consider the evidence of the prior assaults for the narrow purpose of assessing the relationship between Williams and Brace. Specifically, the jury was instructed:

> You have heard evidence about conduct between the defendant and the alleged victim that occurred before November 8, 2008. *You may consider this evidence in the context of assessing the relationship between the defendant and Brandi Brace, the complaining witness, including their respective credibilities.*
>
> However, you must be cautious in drawing conclusions from this testimony. You may not consider this evidence as directly proving that defendant committed the assault which he is charged with on November 8th, nor may you simply assume that because the defendant was said to [have] committed past acts of violence that he is guilty by virtue of having bad character. Rather you must consider this evidence in light of all the other evidence in the case in deciding whether the State has met its burden of proof.

(Doc. 7-2 at 108-09 (emphasis added).) The jury was clearly instructed that it was not permitted to consider the prior bad act evidence as probative of conduct charged or to infer from the evidence that Williams had a propensity to commit assault. Thus, I recommend that the Court conclude that the prior bad act evidence did not deprive Williams of a fundamentally fair trial and that he is not entitled to habeas relief on this claim.

9

### III.     Alibi Testimony

Williams also argues that the victim's testimony was contradicted by the testimony of Williams's alibi witness.  The Commissioner contends that this claim was not raised before the Vermont Supreme Court and that, accordingly, the claim should be dismissed for failure to exhaust state court remedies.  (Doc. 9 at 2.)  I recommend that the Court dismiss the claim because it has not been exhausted, it is procedurally barred in state court, and Williams has shown neither cause for his default nor prejudice attributable thereto.  Alternatively, I recommend that, even if the Court were to find that the claim is exhausted, Williams is still not entitled to habeas relief.

### A.     Legal Standard

"An application for a writ of habeas corpus . . . pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  "Exhaustion requires a petitioner fairly to present the federal claim in state court."  *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003).  "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  *Id.* at 294-95 (quotation omitted).  "The claim presented to the state court, in other words, must be the substantial equivalent of the claim raised in the federal habeas petition."  *Id.* at 295 (quotation omitted).  The requirement gives the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 276 (1971) (quotation omitted).  In order to completely exhaust state court remedies, a petitioner must have presented his claims "to

the highest court of the pertinent state." *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990). "The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)).

When a claim has not been presented to the state's highest court, a federal court may nonetheless deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). If a claim is procedurally barred in state court, it may only be considered on federal habeas review upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Teague v. Lane*, 489 U.S. 288, 298 (1989).

### B. Application

Williams's argument, that his alibi witness told the truth about his whereabouts, is essentially an argument that the evidence was insufficient to convict him of the crime charged. Williams did not raise a sufficiency of the evidence claim before the Vermont Supreme Court. The sole issue before the Vermont Supreme Court was the admissibility of the Rule 404(b) other crimes evidence. Accordingly, I recommend that the Court find this sufficiency claim has not been exhausted.

The Court must next consider whether Williams's unexhausted claim is procedurally barred. Under Vermont law, Williams could have requested collateral relief in the form of a petition for post-conviction review ("PCR"). 13 V.S.A. § 7131 ("A

prisoner who is in custody under sentence of a court and claims the right to be released . . . may at any time move the superior court . . . to vacate, set aside or correct the sentence."). In *In Re Laws*, 182 Vt. 66 (2007), the Vermont Supreme Court clarified the scope of relief available under PCR.

> The purpose of post-conviction relief . . . is to provide prisoners with an opportunity to challenge the legality of their confinement, and thus to guard against illegal restraints on liberty. One fundamental aspect of post-conviction relief is that a challenge to confinement may be brought at any time. Nonetheless, in other respects, post-conviction relief is a limited remedy. . . . [C]laims for PCR are limited to collateral attacks on the petitioner's conviction. For example, a PCR may raise ineffective assistance of counsel, a constitutional challenge to the statute under which the petitioner was convicted or sentenced, or the adequacy of a Rule 11 plea colloquy.
>
> . . . .
>
> There are also procedural limitations on the issues that may be raised in a PCR. A PCR may not raise an issue that was litigated in the criminal trial but deliberately bypassed on direct appeal.

*In Re Laws*, 182 Vt. 66, 71-72 (2007) (quotations, citations, and brackets omitted).

Here, Williams's claim would not be permitted to be raised in a PCR for two reasons. First, Williams's claim that the evidence was insufficient to convict is a claim generally advanced upon direct appeal, while PCR claims "are limited to collateral attacks" such as "ineffective assistance of counsel, a constitutional challenge to the statute under which the petitioner was convicted or sentenced, or the adequacy of a Rule 11 plea colloquy." *Id.* at 72; *see* BLACK'S LAW DICTIONARY 278 (8th ed. 2004) (defining "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which

the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective"). Second, Williams raised the sufficiency of the evidence issue in his criminal trial but deliberately bypassed this argument on direct appeal. At the close of the State's case, Williams moved to dismiss the charge, arguing that there was insufficient evidence of serious bodily injury. (Doc. 7-2 at 30.) The trial court denied the motion. (Doc. 7-2 at 31.) In addition, Williams filed a motion for a new trial arguing that "the evidence in this case preponderates heavily against the guilty verdict and creates the distinct possibility of a miscarriage of justice." (Doc. 5-2 at 13.) The trial court also denied this motion. (Doc. 5-2 at 14.) Because Williams did not raise this claim before the Vermont Supreme Court, he could not now raise it in a PCR petition. Accordingly, Williams's claim would be procedurally barred if the Court were to dismiss for failure to exhaust state court remedies.

When unexhausted claims are procedurally barred in state court, they may be dismissed by the federal court. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004). To avoid procedural default in federal court, Williams must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). Use of the fundamental miscarriage of justice exception is extremely rare, and should be applied only in extraordinary circumstances. *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003).

In this case, although Williams has consistently maintained that he is innocent, he has not made the required cause and prejudice showings. Nor does he urge the Court to

excuse his procedural default on the basis of a fundamental miscarriage of justice. Williams argues only that his alibi witness told the truth. He fails to set forth any other reason why the jury should not have believed Brace's account of the assault. Brace testified in detail about the events giving rise to the assault. (Doc. 7-1 at 61-75.) The investigating officer, to whom Brace reported the assault, testified that he detected a raspy quality to Brace's voice, consistent with the strangulation she claimed occurred. (Doc. 7-2 at 20.) In addition, Williams's alibi witness testified that Williams was visiting her house in Gloversville, New York, several hours drive from Bennington, sometime between 5:00 and 6:00 p.m. on the day of the assault. *Williams*, 2010 WL 3277097, at ¶ 7. Brace testified that although she reported to the police that the assault had occurred at about 6:00 p.m., she could not recall the exact time it occurred, indicating the possibility that the jury could have credited both witness's testimony and concluded the assault must have occurred earlier than Brace had believed. *See id.* Thus, I recommend that the Court conclude that Williams cannot meet his burden**,** and dismiss his claim as procedurally barred.

      Although Williams plainly did not raise a sufficiency of the evidence challenge in his direct appeal, as part of his Rule 404(b) claim, he did argue that: "This was a classic swearing contest; a case dependent completely upon the credibility of the [alleged victim]. Amy Vonostrand, an alibi witness, placed Mr. Williams at her house in Gloversville, New York during the time of the alleged assault." (Doc. 5-2 at 21.) Arguably, a court could conclude that this brief passage is a fair presentation of a

sufficiency challenge, and that claim therefore was exhausted. In that event, Williams is still not entitled to habeas relief as his claim is without merit.

The Due Process Clause of the Fourteenth Amendment forbids a conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quotation omitted). "Despite the importance of this constitutional principle, judges must be highly deferential to the jury's verdict of conviction . . . ." *Langston v. Smith*, No. 10-3045-pr, slip. op. at 9 (2d Cir. Jan. 7, 2010). "[C]ourts view the evidence in the light most favorable to the prosecution . . . and will uphold the jury's verdict unless the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could convict." *Id.* at 9-10 (quotation and brackets omitted).

Federal review of the sufficiency of the evidence to support a state court conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. *Wright v. West*, 505 U.S. 277, 292 (1992). Williams is entitled to relief only if the state court unreasonably applied the standard that, upon viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324; *see* 28 U.S.C. § 2254(d)(1). Whether Williams's alibi witnesses told the truth presented an issue of credibility for the jury to decide. Having reviewed the trial transcript, it is clear that the state court did not unreasonably apply the *Jackson v. Virginia* standard.

Brace's trial testimony included the following details of the assault, specifically describing the scene in her apartment where it occurred:

> Q      Where were you sitting?
>
> A      I was sitting in my rocking chair in the corner of my living room.
>
> . . . .
>
> Q      So he pulled a chair over. How far was he sitting away from you?
>
> A      He was sitting right in front of me. There was probably four inches between our knees.
>
> Q      And [the baby] was in the other room, right?
>
> A      Yes.

Brace then described precisely what Williams said to her, how he struck her, and how he then proceeded to strangle her:

> Q      What did Mr. Williams say to you at this time?
>
> A      He said, "What is your fucking problem? You're the reason I'm not a part of her life." And then he backhanded me, and as he was backhanding me he says, "Answer me," and he just hit me.
>
> Q      Which hand did he use to backhand you?
>
> A      His right hand.
>
> Q      And where did he hit you?
>
> A      He hit me across the mouth.
>
> Q      So he took his right hand to the right side of your face?
>
> A      Yes.
>
> Q      Did he say anything else as he was doing it?

> A    Not while he –he hit me and then like right after that, he took his right hand, and he started strangling [me] with it.

(Doc. 7-1 at 61-75.)

The State then presented testimony from the investigating officer to whom Brace reported the assault. The officer testified that Brace was visibly upset and nervous at the time he took her statement:

> Q    On November 9th, 2008, did you investigate an incident involving Brandi Brace?
>
> A    I did.
>
> Q    Okay. How did you become involved in that?
>
> A    I believe Brace came to the office to file a complaint, and I was called in to take it.
>
> Q    Okay. And did you take a statement from her?
>
> A    I did.
>
> Q    What was her demeanor at the time when you met with her?
>
> A    She was upset. At times she would cry. She was afraid, nervous. Very nervous.

The officer also testified about the photographs he took of Brace and what they showed:

> Q    And did you take any pictures of her?
>
> A    I did.
>
> Q    Why did you take pictures?
>
> A    She had a . . . cut on her lip, and I took some pictures of the neck area where she said she was strangled.
>
> Q    Officer . . . , I'm showing you what's been marked and admitted as State's [exhibit] 1. Do you recognize that picture?

> A    I do.
>
> Q    Okay.  What is it?
>
> A    It's a picture of Brace, her lip, and she's holding it down so I can see the cut mark on the inside, it would be the right side of her lip.

The officer testified about his own observations of Brace's injuries, specifically noting that it did not surprise him that Brace's neck bore no visible injuries of strangulation:

> Q    Did you observe with your naked eye any physical injuries to Ms. Brace's neck or throat?
>
> A    I did not.
>
> Q    Based on your report that you took from her, how long after the incident did she come to the police station?
>
> A    It was approximately 22 hours, I believe.
>
> Q    And did it surprise you that 22 hours after an alleged strangulation you were not able to see visible injuries?
>
> A    No, it did not.
>
> Q    And why is that?
>
> A    Because a lot of times the injuries that come from strangulation are so faint they're hard to see and sometimes they're even more difficult to try to take a picture of.

Finally, the officer testified that Brace's voice was "raspy" and that "she was having a hard time swallowing." (Doc. 7-2 at 18-20.)  From this evidence, a rational trier of fact could have found beyond a reasonable doubt that Williams assaulted Brace. Accordingly, I recommend that the Court conclude that Williams is not entitled to habeas relief on this claim.

18

## **Conclusion**

For the reasons set forth above, I recommend that the Commissioner's motion to dismiss (Doc. 9) be GRANTED and Williams's petition for writ of habeas corpus (Doc. 5) be DENIED. If the Court adopts this Report and Recommendation, the Court should also deny Williams's Motions for Appointment of Counsel (Docs. 2, 8) as moot.

Dated at Burlington, in the District of Vermont, this 14th day of January, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).